# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF MARGUERITE SCHUBERT and
DALE E. SCHUBERT PERSONAL
REPRESENTATIVE,

Petitioner-Appellants,

v

DEPARTMENT OF TREASURY,

Respondent-Appellee.

FOR PUBLICATION
December 21, 2017
9:05 a.m.

No. 337121
Tax Tribunal
LC No. 15-000240-TT

Before: MURPHY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Petitioner, Dale Schubert as personal representative for the Estate of Marguerite Schubert, appeals as of right the Tax Tribunal order determining that the Estate was not entitled to a principal residence exemption (PRE), MCL 211.7cc(1), for the 2010, 2011, 2012, and 2013 tax years. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The subject property (823 S. Lakeshore Drive) is a residential property located in Ludington, Michigan. Schubert and her husband purchased the property in 1977. According to petitioner, she first filed an affidavit claiming a PRE for the property in 1994, and it was granted at that time.[1] It appears that from 1994 until 2013, Schubert continued to claim and receive a PRE on the property. However, around August 2013, the Department began an audit on the property. And, on November 14, 2013, the PRE was denied for the 2010, 2011, 2012, and 2013 tax years after the Department determined that it was not owned and occupied as Schubert's principal residence.

---

[1] A copy of the 1994 affidavit is not available in the lower court record; however, this fact is not disputed by the Department.

-1-

Schubert, through her personal representative, sought an informal conference before the Department's PRE unit. The hearing was held on September 22, 2014.[2] Petitioner asserted that before her retirement, Schubert was a public school teacher in Midland, Michigan. After her retirement, she continued to use a Midland apartment as her mailing address until her son took over responsibility for her bills. Additionally, her extended family remained in Midland, and she continued to see doctors in Midland. Petitioner represented to the conference referee that Schubert intended to live at the Ludington property during her retirement. Schubert's son explained at the conference that Schubert seasonally resided in Florida, Arizona, Midland, and Ludington, but that she spent most of the year at the Ludington property.[3] He maintained that Schubert only kept the apartment in Midland for convenience. In the summer of 2012, Schubert moved into a rehabilitation center, where she stayed until September or October 2012. She then returned to the subject property. In the fall of 2013, she entered a different rehabilitation facility, where she remained until her death in 2014.

Despite the facts presented by petitioner, the Department maintained that its denial of the PRE was proper for a number of reasons. First, it questioned whether Schubert was an "owner" as defined by MCL 211.7dd(a). Second, it contended that there was no evidence that Schubert occupied the property as her principal residence during the 2010 through 2013 tax years. Third, the Department asserted that in 2012 and 2013, when Schubert was at the rehabilitation facilities, she did not maintain an intent to return to the subject property and she did not meet the requirements to retain the exemption under MCL 211.7cc(5)(a), (b), or (c).

The informal conference referee found that Schubert was an owner of the property because she was a grantor who had placed her property in a revocable trust. See MCL 211.7dd(a)(*vi*). The referee, however, determined that petitioner had failed to present any documentation showing that the Ludington property was Schubert's principal residence, whereas the Department presented a number of documents to show that Schubert's principal residence was her Midland apartment. The referee further stated that because there was no evidence that the Ludington property was Schubert's principal residence during the 2010 through 2012 tax years, petitioner could not establish that Schubert was entitled to retain the exemption under MCL 211.7cc(5).[4]

---

[2] Schubert died on May 22, 2014.

[3] In a March 2016 submission of evidence, petitioner clarified that Schubert spent about 8 months per year at the property, typically from mid-March to mid-November; she spent the other months in Florida, Arizona, Texas, or Midland, Michigan.

[4] In relevant part, MCL 211.7cc(5) provides:

> An owner of property who previously occupied that property as his or her principal residence but now resides in a nursing home or assisted living facility may retain an exemption on that property if the owner manifests an intent to return to that property by satisfying all of the following conditions:

On February 13, 2015, the informal conference recommendation was adopted as the Department's final decision under MCL 211.7cc(8). Petitioner appealed the decision to the Tax Tribunal, asserting that Schubert had established a PRE for the property in 1994 and had thereafter continuously maintained the property as her primary residence until her death in 2014. In response, the Department conceded that Schubert owned the Ludington property, but contended that she did not occupy it as her principal residence for the tax years at issue. It presented documentary evidence showing that Schubert's driver's license listed her Midland address until September 2013, that her 2009 through 2012 Michigan Income tax returns listed her Midland address, that her voter registration history listed her Midland address and indicated that she was registered to vote in Midland, and that her vehicle registration address was her Midland address. In addition, the Department submitted a copy of a PRE Questionnaire completed by petitioner during the August 2013 audit, which indicated that the property was occupied "seasonally," and a letter from Schubert's son admitting that the Midland address was Schubert's permanent mailing address.

Petitioner responded by submitting a number of documents to establish that Schubert owned and occupied the property as her principal residence for the tax years in question. In particular, he submitted copies of envelopes sent to Schubert at her Ludington address in 2013 and 2014; a tax refund check from 2014 that reflected Schubert's Ludington address; a copy of the certificate of title for Schubert's vehicle that listed her Ludington address; a copy of Schubert's Michigan identification card apparently issued in September 2013 that proclaimed Schubert's address was in Ludington; a copy of Schubert's voter identification card stating that as of 2014 she was registered to vote in Ludington; a copy of Schubert's voter details stating that she had voted absentee in 2008, 2010, and 2012;[5] a copy of her obituary published in a Ludington area newspaper; an affidavit indicating that a letter to Schubert's creditors was published in a Ludington area newspaper; a document purporting to show that Schubert's will was probated in the county that Ludington is located within; and progress notes from Schubert's

---

(a) The owner continues to own that property while residing in the nursing home or assisted living facility.

(b) The owner has not established a new principal residence.

(c) The owner maintains or provides for the maintenance of that property while residing in the nursing home or assisted living facility.

(d) That property is not occupied, is not leased, and is not used for any business or commercial purpose.

[5] This document showed that Schubert was registered to vote using her Midland address in December 2007, but changed the address where she was registered to vote from Midland to Ludington in October 2013.

rehabilitation home noting that shortly before her death Schubert requested to be taken back to Ludington.[6]

On June 17, 2016, the Tribunal issued a final opinion and judgment, affirming the Department's denial of the PRE for tax year 2010, 2011, and 2013, but reversing its denial for the 2013 tax year.[7] Petitioner moved for reconsideration, arguing in part that petitioner had not been allowed sufficient time to rebut the Department's evidence. On July 15, 2016, the Tribunal granted the motion, finding that rebuttal evidence may have been improperly excluded. The Tribunal ordered that the rehearing be limited to one hour, and it subsequently denied petitioner's motion to extend the time for the hearing to two hours. At the rehearing, petitioner submitted additional evidence, including copies of unredacted individual income tax returns for 2009 through 2012, a copy of the first page of Schubert's 2010-2012 Michigan Homestead Property Tax Credit claim, and a copy of a letter from Consumer's Energy stating that the subject property had not received external electrical services since June 2008.

On February 1, 2017, the Tribunal affirmed the Department's denial of the PRE for the 2010, 2011, 2012, and 2013 tax years. The Tribunal determined that in order to qualify for a PRE, a person must both own and occupy a property as his or her principal residence on or before the relevant date of the tax years involved. The Tribunal held that although there was no question that Schubert owned the property during the relevant tax years, there was a question as to whether she occupied it as her principal residence. The Tribunal found that, based on the evidence presented, it was clear that Schubert "had a presence" at the property; however, it found that her Midland address was her principal residence. The Tribunal explained that Schubert used her Midland address for her 2009 through 2012 income tax returns; that she was registered to vote in Midland until October 3, 2013; that her Michigan Identification Card listed her Midland address until September 13, 2013; and that her vehicle was registered in Midland in 2010. The Tribunal further found that virtually all of petitioner's documentary evidence was developed *after* Schubert was audited in August 2013. Finally, the Tribunal found that because Schubert did not occupy the property as her principal residence before moving into a nursing home, petitioner did not qualify under MCL 211.7cc(5) for a PRE for the 2013 tax year.

## II.  PRINCIPAL RESIDENCE EXEMPTION

### A.  STANDARD OF REVIEW

Petitioner argues that the Tribunal erred by affirming the Department's denial of a PRE for the property for the 2010 through 2013 tax years. In the absence of fraud, this Court reviews decisions by the Tax Tribunal for misapplication of the law or adoption of a wrong principle.

---

[6] Additional exhibits were submitted; however, they are not pertinent to the issues raised on appeal.

[7] The June 2016 order concluded that petitioner was entitled to a PRE for 2013 because of the provision in MCL 211.7cc(5) applying to an owner in a nursing home or other rehabilitation facility.

-4-

*Power v Dep't of Treasury*, 301 Mich App 226, 229-230; 835 NW2d 622 (2013). When the Tribunal's findings of fact are supported by competent, material, and substantial evidence on the whole record those findings are conclusive. *EldenBrady v City of Albion*, 294 Mich App 251, 254; 816 NW2d 449 (2011). "[S]tatutes exempting persons or property from taxation must be narrowly construed in favor of the taxing authority." *Power*, 301 Mich App at 230 (quotation marks and citation omitted). The burden of proving entitlement to a tax exemption rests with the person claiming the exemption. *Stege v Dep't of Treasury*, 252 Mich App 183, 189; 651 NW2d 164 (2002).

Issues regarding the proper interpretation and application of a statute are reviewed de novo. *Manske v Dep't of Treasury*, 282 Mich App 464, 468; 766 NW2d 300 (2009). When interpreting a statute, our main goal is to determine the Legislature's intent. *EldenBrady*, 294 Mich App at 254. The most reliable indicator of the Legislature's intent is the words used in the statute. *Id*. Therefore, we first examine the statutory language, giving the words used their plain and ordinary meaning. *Id*. at 254-255. If a statute defines a word or phrase, that definition is controlling. *Orthopedic Assoc of Grand Rapids, PC v Dep't of Treasury*, 300 Mich App 447, 451; 833 NW2d 395 (2013).

## II. ANALYSIS

"Michigan's principal residence exemption, also known as the 'homestead exemption,' is governed by §§ 7cc and 7dd of the General Property Tax Act, MCL 211.7cc and MCL 211.7dd." *EldenBrady*, 294 Mich App at 256. Under MCL 211.7cc(1), "[a] principal residence is exempt from the tax levied by a local school district for school operating purposes . . . if an owner of that principal residence claims an exemption as provided in this section." In order to receive the exemption, a taxpayer must file an affidavit claiming the exemption. *Power*, 301 Mich App at 231. MCL 211.7cc(2) sets forth the requirements for the affidavit:

> Except as otherwise provided in subsection (5), an owner of property may claim 1 exemption under this section by filing an affidavit . . . . *The affidavit shall state that the property is owned and occupied as a principal residence by that owner of the property on the date that the affidavit is signed* and shall state that the owner has not claimed a substantially similar exemption, deduction, or credit on property in another state. . . . If an owner of property filed an affidavit for an exemption under this section before January 1, 2004, that affidavit shall be considered the affidavit required under this subsection for a principal residence exemption and that exemption shall remain in effect until rescinded as provided in this section. [Emphasis added.]

In part, the Legislature defined the term "principal residence" to mean "1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or

she intends to return and that shall continue as a principal residence until another principal residence is established. . . ."[8] MCL 211.7dd(c).

In the proceedings before the Tribunal, the Department contended that, read together, MCL 211.7cc and MCL 211.dd(c) require a person claiming a PRE to occupy the property as his or her principal residence during every tax year the exemption is claimed. The term "occupied" is not defined by the statute. If a word or phrase is undefined by the statute, we may turn to a dictionary for definitions. *EldenBrady*, 294 Mich App at 255. *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "occupy" in relevant part as "to reside in as an owner or tenant." In turn, "reside" is defined as "to dwell permanently or continuously: occupy a place as one's legal domicile." *Id*.; see also *EldenBrady*, 294 Mich App at 259 (defining "unoccupied" in MCL 211.7dd(c) as meaning without a human tenant or resident). Accordingly, it is clear that a person must dwell either permanently or continuously at a property in order to "occupy" the property.

On appeal, however, petitioner asserts that Schubert only had to occupy the property on the date that she filed the affidavit claiming the PRE under MCL 211.7cc(2). MCL 211.7cc(2) requires an owner to aver that the property "*is owned and occupied as a principal residence by that owner of the property on the date that the affidavit is signed . . . .*"[9] Petitioner further contends that the definition of "principal residence" in MCL 211.7dd(c) includes only an ownership, not an occupancy requirement. We agree that the *first* sentence of the definition in MCL 211.7dd(c) does not contain an occupancy requirement. However, the second sentence of the definition provides that "[e]xcept as otherwise provided in this subdivision, *principal residence includes only that portion of a dwelling* or unit in a multiple-unit dwelling that is subject to ad valorem taxes and *that is owned and occupied by an owner of the dwelling or unit*." MCL 211.7dd(c).[10] Further, the definition goes on to provide in later sentences that under certain circumstances, portions of *unoccupied* property may be included in the definition of principal residence. See MCL 211.7dd(c); see also *EldenBrady*, 294 Mich App at 259 (finding

---

[8] The definition of "principal residence" additionally sets forth a number of situations in which property is considered to be part of the principal residence even if it does not strictly meet the above definition. See MCL 211.7dd(c). For example, the statute explains that under some circumstances unoccupied property can be included in the definition of principle residence, as can portions of a property that are rented or leased to another person. See MCL 211.7dd(c).

[9] This requirement likely reflects the fact that an affiant cannot generally aver to events that may occur in the future. In that regard, it is axiomatic that a person claiming a PRE on his or her property could not properly aver that he or she currently owns and occupies the property as his or her principal residence and will continue to own and occupy the property as his or her principal residence for the next 50 years.

[10] We recognize that this portion of the definition expressly applies to multiple-unit dwellings, see *Rentschler v Twn of Melrose*, ___ Mich App ___, ___; ___ NW2d ___ (2017) (Docket No. 336333); slip op at 3. However, because we must read a statute in context to produce a harmonious whole, it is nevertheless relevant to our analysis. See generally *Robinson v City of Lansing*, 486 Mich 1, 15; 782 NW2d 171 (2010).

that an unoccupied 10-acre parcel that was adjoining or contiguous to the petitioners dwelling satisfied the definition of principle residence set forth in MCL 211.7dd(c)). It makes little sense to distinguish between times when unoccupied property qualifies as a principle residence and times when it does not if there were not an underlying requirement that the property must be both owned and occupied as a principal residence. In addition, MCL 211.7cc(5) expressly provides that a person who is not occupying his or her property because he or she is residing in a nursing home or assisted living facility must satisfy a number of requirements to retain the exemption. If a property did not have to be occupied beyond the date set forth in the affidavit, then the language providing this exception from the occupancy requirement would be nothing more than surplusage. See *Robinson v City of Lansing*, 486 Mich 1, 21; 782 NW2d 171 (2010) (stating that we should avoid a construction of a statute that would render any part of it surplusage or nugatory). Accordingly, we conclude that under the plain language of the statute, a person claiming a PRE on a property must establish that he or she owned and occupied the property as a principal residence for each year that the exemption is claimed.

Petitioner next argues that the Tribunal erred by finding that Schubert used her Midland apartment as her principal residence and so could not claim her Ludington property as her principal residence. MCL 211.7dd(c) provides that "principal residence" means "the 1 place where *an owner of the property* has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that *shall continue as a principal residence until another principal residence is established*." (Emphasis added). Petitioner directs us to consider the phrase "shall continue as a principal residence until another principal residence is established." This language suggests that once a property is established as an owner's principal residence the sole way for it to lose its status as a principal residence is if the owner establishes a new principal residence. Petitioner then contends that in order to establish a new principal residence the owner must, in fact, *own* the new property.

However, MCL 211.7dd(c) only defines the phrase "principal residence." It does not provide that if a property is, at one time or another, an owner's principal residence, that the owner will be entitled to the PRE in MCL 211.7cc(1) until such time as he or she establishes a new principal residence. Instead, MCL 211.7cc(5) provides that "after exempted property *is no longer used as a principal residence* by the owner claiming an exemption, that owner shall rescind the claim of exemption by filing with the local tax collecting unit a rescission form prescribed by the department of treasury." (Emphasis added). Thus, in order to be entitled to the PRE, an owner claiming the exemption has a continuing requirement to *use* the property as his or her principal residence. In order to use a property as his or her principal residence, it must be "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return . . . ." MCL 211.7dd(c). And as explained supra, it must also be a property that he or she occupies. Because the definition of "principal residence" clearly provides that a person can only have one place that he or she holds out as his or her "true, fixed, and permanent home to which, whenever absent, he or she intends to return," if a person stops using the exempted property in that fashion and starts using a rented apartment as his or her true, fixed, and permanent home, then that person, by definition, is no longer using the exempted property as his or her principal residence and must rescind the PRE under MCL

211.7cc(5).  As such, even though MCL 211.7dd(c) provides that a person's principal residence will continue until a new principal residence is established, a person cannot continue to claim a PRE on a property that he or she no longer uses as a principal residence.[11]

Schubert never rescinded the PRE on her Ludington property.  The Department, however, was not required to wait until she filed a rescission under MCL 211.7cc(5).  MCL 211.7cc(8) provides:

> The department of treasury shall determine if the property is the principal residence of the owner claiming the exemption.  Except as otherwise provided in subsection (21), the department of treasury may review the validity of exemptions for the current calendar year and for the 3 immediately preceding calendar years.  Except as otherwise provided in subsections (5) and (32), if the department of treasury determines that the property is not the principal residence of the owner claiming the exemption, the department shall send a notice of that determination to the local tax collecting unit and to the owner of the property claiming the exemption, indicating that the claim for exemption is denied, stating the reason for the denial, and advising the owner claiming the exemption of the right to appeal . . . .

Consequently, the Department was entitled to review the PRE claim to determine if the Ludington property was Schubert's principal residence.  Further, in accordance with that power to review the PRE claim, the Department was free to determine whether Schubert owned and occupied the property and whether she had stopped using it as her principal residence.

Having determined that the Tribunal did not commit an error of law by requiring petitioner establish occupancy, we next turn to whether there was competent, material, and substantial evidence on the whole record to support the Tribunal's findings.

Because a principal residence is defined as one's "true, fixed, and permanent home," MCL 211.7dd(c), and because the burden of proving a tax exemption falls to the person claiming the exemption, *Stege*, 252 Mich App at 189, petitioner had to present evidence linking Schubert to the Ludington address.  A person can present that evidence in the form of testimony or

---

[11] Petitioner's interpretation of the statute would lead to absurd results.  Assume, for example, that a person has a principal residence as that term is defined in the first part of the definition.  Assume further that the principal residence is wholly destroyed in a fire.  Under petitioner's interpretation, unless the (former) owner of the residence (1) owns a new residence and (2) otherwise satisfies the definition in MCL 211.7dd(c), his or her principal residence will necessarily continue to be the wholly destroyed residence despite the fact that there is literally no residence left for the owner to claim as his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return.  Because we must construe MCL 211.7dd(c) to avoid such absurd results, see *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 142-143; 662 NW2d 758 (2003), we reject petitioner's interpretation.

documentary evidence. Generally, documentary evidence relevant to whether a person occupies the property as his or her principal residence can include utility bills, driver's licenses, tax documents, other documents showing the petitioner's address, and voter registration cards. See generally *Drew v Cass Co*, 299 Mich App 495, 500-501; 830 NW2d 832 (2013). No single document is conclusive. *Id*.

In this case, Schubert's son testified at the hearing regarding Schubert's intent. Petitioner also presented a number of documents purporting to show that Schubert owned and occupied the Ludington property as her principal residence during the tax years in question. The Department responded by submitting a number of documents purporting to show that Schubert was occupying her Midland apartment as her principal residence. Weighing the competing evidence, the Tribunal found that Schubert's Midland apartment was being occupied as her principal residence, not her Ludington property.

On appeal, petitioner attacks the credibility of the documentary evidence submitted by the Department. We briefly address each challenge in turn.

First, petitioner argues that the "drivers license search result" document submitted by the Department did not show conclusively that Schubert lived in Midland during the tax years at issue. Instead, petitioner contends the document shows that Schubert resided, at various times, in Texas, in Midland, in Ludington, and at a post office box. He correctly points out that although the document is dated March 2015, it does not contain any dates indicating when she lived at any of the places listed. Instead, the document states that the "current" address on Schubert's identification card is her Ludington address, whereas Schubert's Midland address is listed as a "historical" address. A copy of Schubert's most recent identification card was also submitted. It proclaimed Schubert's address as her Ludington address; however, it was issued in September 13, 2013, which was after the Department began its audit of the subject property. Given this evidence, the Tribunal could reasonably conclude that Schubert's identification card was changed from Midland (one of her historical addresses on the driver's licenses search document) to Ludington in 2013, which would make Ludington her current address. As such, the Tribunal's reliance on this document was not improper, despite the fact that it could arguably be interpreted in petitioner's favor.

Next, petitioner asserts that the 2009 through 2012 Michigan Income Tax Returns do not provide proof that Schubert's principal residence was her Midland apartment. He acknowledges that the tax returns proclaim in line 1 that Schubert's "home address" was her Midland apartment. However, petitioner asserts that because Schubert lived in Ludington from about mid-March until about mid-November, and because the tax returns were completed while she was not living on the property, Schubert was required to list her address as her Midland apartment. His argument, however, goes to the weight of the documents. And "[t]he weight to be accorded to the evidence is within the Tax Tribunal discretion." *Drew*, 299 Mich App at 501. "[T]his Court may not second-guess the [Tribunal's] discretionary decisions regarding the weight to assign to the evidence." *Id*.

Similarly, we find no error with the weight the Tribunal accorded to Schubert's Homestead Property Tax Credit Claim forms for 2010 through 2012. Petitioner argues that Schubert listed her Midland address because that was where she was living on December 31 of

the relevant years, not because her Midland address was her principal residence. In support, petitioner points out that line 36 of the Homestead Property Tax Credit Claim asks the taxpayer "Address where you lived on December 31, [of the tax year], if different than reported on Line 1."[12] The fact that the Tribunal did not credit this explanation for the address listed in Line 1 goes to the weight of the evidence, which we may not second-guess on appeal. See *id*.[13]

Petitioner also challenges the weight given to the voter registration records. The information indicated that Schubert registered to vote using her Midland address on October 30, 2007. It also indicated that on October 3, 2013, she registered to vote using her Ludington address. According to the document, Schubert last voted in November 2012, which would be when she was registered to vote in Midland, not Ludington. Therefore, this document supports the Tribunal's findings of fact, despite the fact that it does not conclusively tie Schubert to her Midland apartment for the tax years at issue.

The challenge to the weight of the submitted vehicle registration information fails for the same reason. According to the document submitted, Schubert's vehicle was registered using the Midland address on October 13, 2006 and again on September 12, 2010. On September 9, 2013, a title was issued for the vehicle that listed Schubert's Ludington address. Petitioner contends that this document only reflects registration of the vehicle in Schubert's name so that her son could try and sell the vehicle for her. Petitioner also asserts that Schubert's son testified at the hearing that Schubert no longer drove the vehicle (or others) during the tax years in question. The Tribunal, however, heard such testimony and decided to accord some weight to the address and date listed on the vehicle registration document. We find nothing improper in that exercise of discretion.

Finally, petitioner contends that the notation "seasonally" on the PRE Questionnaire submitted as part of the August 2013 audit does not prove that Schubert only used the property seasonally. In Part 2 of the questionnaire, the notation "seasonally" is handwritten in response to the question "Do you currently live at the property listed in Part 1?" The property in Part 1 is

---

[12] Furthermore, we fail to see how this establishes that the address in Line 1 was *not* Schubert's principal residence. It appears that there is no date requirement listed for Line 1, which would allow Schubert to list her Ludington address on Line 1 and her Midland address (the place she was living on December 31 of the relevant tax years) on Line 36.

[13] Petitioner also takes issue with the Department's decision to whiteout certain information on the Homestead Property Tax Credit Claim form. However, we have carefully reviewed the redacted and unredacted versions of the form and do not see any attempt to mislead the Tribunal by whiting out the information. Moreover, the Tribunal did not rely on the whited out information in any form when reaching its decision

In addition, petitioner contends that because the 2012 Homestead Property Tax Credit form lists the Ludington address in Line 1, per the Tribunal's logic, that should mean that Schubert is entitled to a PRE for 2012 on the subject property. However, the 2012 tax return appears to have been prepared after the audit was conducted; moreover, no one document is dispositive. See *Drew*, 299 Mich App at 501.

-10-

Schubert's Ludington property. Although we agree that this notation is not conclusive, we do not agree that it was improper for the Tribunal to rely on it in reaching its decision. The Tribunal was not required to credit petitioner's explanation for the notation.

Having carefully and thoroughly reviewed each exhibit submitted to the Tribunal, we conclude that although petitioner challenged the evidentiary value of the Department's evidence, the Tribunal was still entitled to rely on those documents when reaching its decision. And on this record, we conclude that the Tribunal's finding that Schubert was using her Ludington property as her principal residence, not her Midland apartment, was supported by competent, material, and substantial evidence on the whole record. See *EldenBrady*, 294 Mich App at 254.

Affirmed.

/s/ William B. Murphy
/s/ Michael J. Kelly
/s/ Brock A. Swartzle