*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KYLE SHAW RESIDENTIAL PROPERTIES, LLC,

Petitioner-Appellant,

v

CITY OF LANSING,

Respondent-Appellee.

UNPUBLISHED
November 4, 2021

No. 354760
Tax Tribunal
LC No. 20-000404-TT

Before: RONAYNE KRAUSE, P.J., and CAMERON and RICK, JJ.

PER CURIAM.

Petitioner Kyle Shaw Residential Properties, LLC, appeals the final judgment of the Michigan Tax Tribunal (MTT), which determined the value of petitioner's property in Lansing, Michigan, for the 2020 tax year. We affirm.

## I. BACKGROUND

In August 2018, the subject property was sold to JP Morgan Mortgage Acquisition Corporation (JP Morgan) in a foreclosure sale for $39,847. JP Morgan later listed the property for sale, and petitioner purchased it for $42,500 in September 2019. Respondent City of Lansing valued the true cash value (TCV) of the property at $152,600, resulting in a taxable value (TV) of $76,300 for the 2020 tax year. Petitioner disagreed with these values and petitioned the Board of Review (BOR) for relief. The March 2020 BOR found that the property was properly valued and left the TCV and TV unchanged.

Petitioner appealed this decision to the MTT, arguing that the TCV of the property was $50,000 and that the TV of the property was $25,000. Respondent filed an answer and requested that the MTT affirm the BOR's decision. However, respondent later changed its position and asserted that the TCV of the property was $112,500. After holding a hearing and considering the evidence submitted by the parties, the MTT concluded that the TCV of the property was $115,000 and that the TV was $57,500 for the 2020 tax year. This appeal followed.

-1-

## II. STANDARDS OF REVIEW

In *New Covert Generating Co, LLC v Twp of Covert*, 334 Mich App 24, 45; ___ NW2d ___ (2020), this Court observed:

> This Court's review of agency decisions involving property tax valuations is quite limited: "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28 . . . . This Court reviews de novo whether the Tax Tribunal erred as a matter of law when interpreting and applying statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). Agency interpretations of a statute are entitled to "respectful consideration, but they are not binding on courts and cannot conflict with the plain meaning of the statute." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 117-118; 754 NW2d 259 (2008).

"When the Tribunal's findings of fact are supported by competent, material, and substantial evidence on the whole record, those findings are conclusive." *Estate of Schubert v Dep't of Treasury*, 322 Mich App 439, 447; 912 NW2d 569 (2017). "Substantial evidence must be more than a scintilla of the evidence, although it may be substantially less than a preponderance of the evidence." *Forest Hills Coop v City of Ann Arbor*, 305 Mich App 572, 588; 854 NW2d 172 (2014) (quotation marks and citation omitted).

## III. ANALYSIS

Petitioner argues that the TV for the 2020 tax year is inaccurate because the property's TCV was improperly assessed. We disagree. MCL 211.27a provides in relevant part as follows:

> (1) Except as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963.

> \* \* \*

> (3) Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer.

"[TCV] is synonymous with fair market value." *WPW Acquisition Co v City of Troy*, 250 Mich App 287, 298; 646 NW2d 487 (2002). "Therefore, the assessment must reflect the probable price that a willing buyer and a willing seller would arrive at through arm's length negotiation." *Huron Ridge LP v Ypsilanti Twp*, 275 Mich App 23, 28; 737 NW2d 187 (2007). An arm's-length negotiation "is characterized by three elements: it is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 699; 808 NW2d 484 (2010) (quotation marks and citations omitted).

[T]o determine [TCV], the property must be assessed at its highest and best use. . . . Highest and best use is defined as the most profitable and advantageous use the owner may make of the property even if the property is presently used for a different purpose or is vacant, so long as there is a market demand for such use. [*Menard, Inc v City of Escanaba*, 315 Mich App 512, 522; 891 NW2d 1 (2016) (alteration in original; emphasis, quotation marks, and citations omitted).]

While "[e]vidence of the selling price of property is relevant in determining the [TV] of property," *Prof Plaza, LLC v City of Detroit*, 250 Mich App 473, 476; 647 NW2d 529 (2002), "the purchase price paid in a transfer of property is not the presumptive [TCV] of the property transferred," MCL 211.27(6).

Indeed, there is no single statutorily required method for determining TCV. *Great Lakes Div of Nat'l Steel Corp v City of Ecorse*, 227 Mich App 379, 390; 576 NW2d 667 (1998). Rather, the MTT must "apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the [TCV] of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Id*. at 389. The MTT must make its own, independent determination of TCV, and it is free to accept or reject either party's valuations or to combine the approaches. *Id*. at 389-390. The three most common approaches to valuation are: "the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach." *Id*. at 390.

In this case, respondent presented evidence of all three approaches. According to respondent, the capitalization-of-income approach supported valuing the property at $146,000, the sales-comparison approach supported valuing the property at $112,500, and the cost-less-depreciation approach supported valuing the property at $198,100. In contrast, petitioner's assertion of valuation was supported by the purchase price of the property and a sampling of purportedly comparable properties in the area. Petitioner also provided evidence that the property had been "deemed unsafe for occupancy" and required extensive "rehabilitation." Petitioner argued that, based on this evidence, the property's TCV was $50,000. The MTT conducted an independent review of this evidence, as well as other evidence that was presented by the parties. Based on this review, the MTT concluded that respondent's evidence of the sales-comparison approach was the most reliable evidence of the property's TCV and that it was appropriate to assign minimal weight to respondent's capitalization-of-income approach. The MTT then valued the TCV of the property at $115,000 for the 2020 tax year, resulting in a TV of $57,500.

On appeal, petitioner argues that the MTT incorrectly applied the law by failing to consider the purchase price of the property. Specifically, petitioner argues that the MTT improperly concluded that the sale was not an arm's-length transaction and, consequently, refused to consider the purchase price of the property. Even if we agreed with petitioner that the MTT erred that the purchase in question was not an arm's length transaction, we would nevertheless conclude that any such error is harmless. This is because the MTT's final opinion and judgment establishes that the MTT *did* consider the purchase price evidence offered by petitioner, but correctly recognized that it was not required to accept the purchase price as conclusive evidence of the property's TCV. As already stated, "the purchase price paid in a transfer of property is not the presumptive [TCV] of the property transferred." MCL 211.27(6). Consequently, the trial court was not required to consider the purchase price when determining the TCV, and petitioner's argument fails.

Importantly, the MTT offered an appropriate rationale for its decision to not rely upon the purchase price. The MTT reasoned that the purchase price should not be relied upon in this case because JP Morgan purchased the property as a result of a foreclosure. The MTT noted that JP Morgan was "not subject to normal market pressures in a foreclosure sale" and that, as a result, "the sale price of the subject property [was] not a reliable indication of its TCV." Indeed, JP Morgan purchased the property in August 2018 for $39,847 and then sold the property to petitioner for $42,500 in August 2019.

Additionally, the MTT explained its acceptance of respondent's evidence over petitioner's evidence:

> Here, the subject property is classified as a commercial property but is used as a multi-unit residential dwelling; however, due to disrepair, the subject property does not have an occupancy permit from Respondent and must be brought into compliance in order to obtain an occupancy permit.
>
> * * *
>
> Petitioner argued that the [assessed values (AVs)] of neighboring properties were lower than the AV of subject property and, while the land was close in size or even identical to the subject, the land values of neighboring properties is set much lower. The subject property is near other multi-unit residential dwellings that are classified as residential and not commercial as the subject is which results in the subject property being in a different [economic condition factor (ECF)] neighborhood than many of its neighboring properties. This, in turn, affects the TCV of both the building and the land of the subject property in Respondent's cost-less-depreciation approach to value contained in the property record card and on which the BOR based the TCV, AV and TV of the subject property for the year at issue here. Further, this classification or zoning difference makes the AV of the subject property appear disparate from neighboring properties of similar use. However, the Tribunal finds that Respondent's cost approach has applied the accepted maximum depreciation for the building and valued the property according to the mass-appraisal guidelines provided by the State Tax Commission using the values for the property as it is currently classified. The classification of the subject property is not an issue before the Tribunal in this case. However, Respondent has not provided its land study or ECF study to support its property record card value conclusions. While a mass appraisal approach seems simple, there are a number of moving parts. Without adequate support for a land value, county multiplier, ECF, and the calculation of depreciation, this approach loses reliability. Furthermore, the cost approach is at its best in valuing new construction because of the lack of deprecation associated with a new build.
>
> The income approach developed by Respondent is based on rental rates, vacancy rates, and expenses derived from a reliable industry source; however, there were no comparable rental properties illustrated as support beyond the averages from the National Apartment Association. Therefore, the Tribunal finds

-4-

Respondent's income analysis only marginally reliable and gives it the appropriate weight in determining the TCV of the subject property.

The sales comparison approach is applicable to most types of real property interests where there are sufficient recent, reliable transactions to indicate value patterns or trends in the market. For property types that are bought and sold regularly, the sales comparison approach often provides a credible indication of market value. When data is available, sales comparison can be the most straightforward and simple way to explain and support an opinion of market value. As such, Respondent's comparable sales approach provides the most reliable evidence in determining the TCV of the subject property in this case. The Tribunal finds that Respondent chose appropriate comparable sales, all sold in 2019, and made reasonable adjustments to the comparable properties. Therefore, the Tribunal finds that primarily based on Respondent's sales comparison approach with minimal weight given to the income approach, the TCV of the subject property for the year at issue here is $115,000 with a resulting SEV/AV of $57,500. [Footnote and citations omitted.]

Despite the MTT's clear evaluation of the evidence and detailed explanation for its determination of value, petitioner contends (1) that the MTT should have accepted petitioner's contentions of value based on his sales evidence, (2) that the MTT overlooked certain characteristics of the property, and (3) that the MTT failed to consider the property's highest and best use. These arguments are without merit. The MTT was not required to employ a specific valuation method, and it was ultimately free to reject petitioner's assertions of value. See *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 389-390. Additionally, to the extent that petitioner emphasizes evidence concerning various property characteristics, i.e., that the property required extensive repair and the manner in which the property *could* be used, these issues concern the weight and credibility of the evidence and were for the MTT to decide. See *Drew v Cass Co*, 299 Mich App 495, 502; 830 NW2d 832 (2013). And, to the extent the MTT did not discuss particular property features, "there is no rule of law that requires the [MTT] to quantify every possible factor affecting value." *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 398-399. Rather, "[t]he [MTT's] overall duty is to determine the most accurate valuation under the individual circumstances of the case." *Id*. at 399. Although the MTT could have been more explicit, it is clear from the proceedings that, as petitioner requested, the MTT assumed multi-family residential to be the property's highest and best use. Ultimately, while petitioner disagrees with the MTT's conclusions, the fact remains that the MTT independently reviewed the evidence presented and made a determination of value that was supported by competent, material, and substantial evidence. See *Meijer, Inc v City of Midland*, 240 Mich App 1, 5; 610 NW2d 242 (2000). Thus, there is no basis for reversing the MTT's finding of value, and petitioner is not entitled to relief.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Thomas C. Cameron
/s/ Michelle M. Rick