*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHARLES SAAD,

      Petitioner-Appellant,

v

COUNTY OF EMMET,

      Respondent-Appellee.

UNPUBLISHED
October 19, 2023

No. 364250
Tax Tribunal
LC No. 21-003923-TT

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Petitioner Charles Saad appeals as of right the final judgment of the Michigan Tax Tribunal (MTT), which affirmed respondent Emmet County's denial of a principal residence exemption (PRE) for the subject property (the Harbor Springs property) for tax years 2018, 2019, 2020, and 2021. We affirm.

## I. BACKGROUND

This dispute arose when respondent denied petitioner a PRE to his Harbor Springs property because petitioner did not satisfy the occupancy requirements under MCL 211.7cc. Petitioner claimed a PRE on the Harbor Springs property in 2005 and enjoyed the exemption for several years. At some point in 2012, petitioner began caring for his elderly parents, requiring him to spend months at a time at their home in Macomb County (the Macomb property). Petitioner would take turns caring for his parents with his sister, Jan Schleicher, in three-month stints. In that same year, petitioner began experiencing seizures and secondary nocturnal seizures. Because of his ailments, petitioner was often stationed at the Macomb property for extended periods to receive treatment until he recovered, which sometimes took several months. Petitioner also changed his mailing and driver's license address, which automatically updated the new address on his voter's registration card, to the Macomb property address. Petitioner's father passed in November of 2021 and his mother passed in April of 2022.

In the latter part of 2021, respondent issued a notice to petitioner denying a PRE to the Harbor Springs property for failing to satisfy the occupancy requirements for tax years 2018, 2019, 2020, and 2021. Petitioner subsequently filed his petition with the MTT, arguing that he resided

at the Harbor Springs property for more than the mandatory six months each year. Petitioner asserted that he would, at times, stay at the Macomb property only to care for his elderly parents or his myriad of health issues. Respondent answered the petition, explaining that it denied the PRE due to occupancy, as the Harbor Springs property was not petitioner's principal residence. Rather petitioner's principal residence was at the Macomb property.

In support of his petition, petitioner submitted four written statements, including from his late mother, Mary Louise Saad, his sister, Ms. Schleicher, his housemate, Connie Jo Hamilton, and his family friend, Peggy Spanos. According to his mother's statement, petitioner was a guest, not a resident, in her home. Petitioner only used the Macomb property address as his mailing address for health reasons but did not contribute financially in any way to her residence. Ms. Schleicher provided a timeline of events in her statement, indicating that in 2012 she began driving petitioner to the hospital because of his seizures. Then, in 2016, petitioner's parents could no longer drive because of their declining health and required more caretaking. Concerning petitioner's mail, Ms. Schleicher stated that any mail received at the Macomb property addressed to petitioner would be forwarded to the Harbor Springs property if needed. Ms. Hamilton explained in her statement that petitioner lived at the Harbor Springs property full-time when she also lived there, except for the periods he went downstate to care for his parents at the Macomb property. Lastly, Ms. Spanos's statement provided that petitioner and Ms. Schleicher took turns caring for their parents and that most recently, it had become too difficult for petitioner to travel due to his health issues. She also indicated that petitioner sleeps in the basement of the Macomb property when he stays there.

Petitioner testified that the reason he changed his mailing address was to receive and pay his bills on time since someone was always at the Macomb property to retrieve the mail and to ensure he would continue receiving his mail should his ailments resurface and cause him to stay at the Macomb address for an extended period. He also testified that he only updated the address on his driver's license to reflect the Macomb property address because the address needed to match where his bills were sent. Petitioner testified that Ms. Hamilton lived on the Harbor Springs property with him sporadically since 2017, but that he never charged her rent. Except for one month in 2018, petitioner never rented the property to anyone.

Respondent argued that petitioner did not meet the occupancy requirements to receive a PRE, as his principal residence for the relevant tax years was the Macomb property. Respondent presented evidence of petitioner's mailing address, driver's license, and voter registration, all listing the Macomb property address as petitioner's address. Respondent asserted that petitioner rented the Harbor Springs property periodically beginning in 2013, including to his caregiver, Ms. Hamilton. Respondent further argued that petitioner's listing the Harbor Springs property for sale several times implied that he did not intend to permanently return to that property. Respondent's representative testified that nine different individuals from the county had documented several inconsistent statements by petitioner as to the reasons why he was living at the Macomb property from 2015 to 2021.

The Administrative Law Judge (ALJ) issued a proposed opinion and judgment upholding the denial of a PRE to the Harbor Springs property. The ALJ found that the following facts were proved by a preponderance of the evidence:

1. The subject property is located at 3220 Greenbriar in Emmet County.

2. The subject property is classified as residential.

3. Petitioner owns the subject property.

4. Petitioner ceased continuously occupying the subject property in 2012.

5. The subject property was listed for sale multiple times since 2009.

6. Based on Petitioner's testimony, he resided at the subject property, at most, six months of the year.

7. Petitioner's driver's license and voter's registration reflects 20227 Millsville Dr. Macomb, MI.

The ALJ also found that although petitioner indisputably owned the Harbor Springs property, ownership was only one element to consider in determining whether a taxpayer was entitled to a PRE. To qualify for a PRE, petitioner must have owned and occupied the subject property as a principal residence. The ALJ concluded that the evidence submitted by petitioner was insufficient to establish that he occupied the Harbor Springs property as his true, fixed, and permanent home, as required by MCL 211.7dd(c).

In making this ruling, the ALJ considered petitioner's testimony regarding the alternative explanations as to why he changed his mailing address, driver's license, and voter's registration to the Macomb property address and petitioner's documentary evidence in the form of written statements by the four individuals alleging that petitioner lived at the Harbor Springs property during the tax years at issue. The ALJ also considered petitioner's testimony that he rotated staying at the Macomb property three months at a time, but found that he provided no evidence that he stayed at the Harbor Springs property six months each year. The ALJ found that petitioner's statements did not credibly establish his occupancy of the Harbor Springs property, particularly because petitioner admitted to holding out the Macomb property as his residence by permanently changing his address on all of the mail and relevant legal documentation.

In the end, the ALJ found that the documentary evidence and testimony petitioner submitted were not a more convincing force as compared to the documentary evidence and testimony submitted by respondent, and ultimately held that petitioner failed to prove he was entitled to a PRE for the relevant tax years. The ALJ relied on respondent's documentary evidence, showing that petitioner's mailing address, driver's license, and voter's registration all listed the Macomb property's address as petitioner's address, and had for almost a decade.[1] The ALJ also

---

[1] Petitioner's businesses dealings were also affiliated with the Macomb property. The record showed that petitioner was the CEO of One Humanity Foundation, Inc. According to the articles of incorporation and other filings organizing One Humanity Foundation, the listed address for the foundation is the Macomb property address. Petitioner was also the executive director of Worldwide Coalitions for Peace, Inc, which also lists the Macomb property address as its address. Additionally, petitioner was involved in several other businesses identifying the Macomb property

found that respondent's representative credibly testified regarding petitioner's inconsistent statements from 2016 through 2021 concerning the reasons why he was living at the Macomb property, inconsistencies which nine different individuals had purportedly documented over time. The ALJ concluded that petitioner did not dwell at the Harbor Springs property permanently or continuously since 2012.

In its proposed opinion and judgment, the ALJ provided that the parties could file exceptions to the findings within 20 days of the date of the proposed opinion and judgment. While the record shows that petitioner sought to file exceptions on September 7, 2022, the MTT found that his petition failed to include proof of service of the exceptions upon the opposing party. The MTT issued a notice of no action to petitioner, indicating that his exceptions were not properly pending and that he needed to file proof of service of the exceptions upon respondent within 14 days of that notice. The MTT determined that because petitioner never responded to the notice, petitioner's September 7, 2022 exceptions were not properly pending.

In its final opinion and judgment, the MTT concluded that petitioner's Harbor Springs property was not entitled to a PRE under MCL 211.7cc for the 2018, 2019, 2020, and 2021 tax years. The MTT adopted the ALJ's proposed opinion and judgment as its final decision and incorporated by reference the findings of fact and conclusions of law contained in the proposed opinion and judgment. This appeal followed.

## II. STANDARD OF REVIEW

Appellate review of a Tax Tribunal decision is limited. *Campbell v Dep't of Treasury*, 509 Mich 230, 237; 984 NW2d 13 (2022). "Where fraud is not claimed, this Court reviews the tribunal's decision for misapplication of the law or adoption of a wrong principle." *Wexford Med Group v Cadillac*, 474 Mich 192, 201; 713 NW2d 734 (2006). The MTT's factual findings are final if supported by "competent, material, and substantial evidence on the whole record." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). "The burden of proving entitlement to a tax exemption rests with the person claiming the exemption." *Estate of Schubert v Dep't of Treasury*, 322 Mich App 439, 448; 912 NW2d 569 (2017).

This Court reviews de novo questions of law, such as the MTT's interpretation and application of a statute. *Foster v Van Buren Co*, 332 Mich App 273, 280; 956 NW2d 554 (2020). When interpreting a statute, this Court must "ascertain and give effect to the intent of the Legislature." *Mich Props, LLC*, 491 Mich at 528 (quotation marks and citation omitted).

## III. ANALYSIS

Petitioner argues that he was entitled to a PRE for the Harbor Springs property and that the MTT erred by concluding that he did not occupy the Harbor Springs property for the 2018, 2019, 2020, and 2021 tax years.

---

address as the organizations' addresses, including HU, Inc., Introvert Images, LLC, Logoi Publishing, Inc., and Transitional Guidance, LLC.

-4-

Michigan's PRE is governed by MCL 211.7cc and MCL 211.7dd of the General Property Tax Act. *Drew v Cass Co*, 299 Mich App 495, 500; 830 NW2d 832 (2013). The Legislature has declared that "[a] principal residence is exempt from the tax levied by a local school district for school operating purposes to the extent provided under . . . the revised school code . . . if an owner of that principal residence claims an exemption as provided in this section." MCL 211.7cc(1). The phrase "principal residence" is statutorily defined to mean, in part, "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established." MCL 211.7dd(c).

"[A] person claiming a PRE on a property must establish that he or she *owned and occupied the property as a principal residence* for each year that the exemption is claimed." *Estate of Schubert*, 322 Mich App at 451 (emphasis added). The word "occupy" is not defined under MCL 211.7cc nor MCL 211.7dd. This Court has explained the meaning of "occupy" as follows:

> *Merriam-Webster's Collegiate Dictionary* (11th ed) defines "occupy," in relevant part, as "to reside in as an owner or tenant." In turn, "reside" is defined as "to dwell permanently or continuously: occupy a place as one's legal domicile." Accordingly, it is clear that a person must dwell either permanently or continuously at a property to "occupy" the property. [*Id*. at 449-450.]

While no single document is conclusive, petitioner must present evidence linking himself to the subject property, including utility bills, driver's licenses, tax documents, voter's registration cards, and other documents showing petitioner's address. *Id*. at 454-455.

The MTT's conclusion that, while petitioner indisputably owned the Harbor Springs property, he otherwise failed to demonstrate that he also occupied the property as his principal residence in the tax years in question, was supported by the evidence. *Id*. at 448. Petitioner produced only his self-serving statements that he occupied the Harbor Springs property *at least* six months of the year and the written statements of four witnesses attesting that petitioner lived at the Harbor Springs property, which the MTT found lacked credibility. While petitioner testified that he rotated staying with his parents for three months at a time, his testimony in no way evidenced the fact that he resided at the Harbor Springs property permanently or continuously. *Id*. at 449-450. As determined by the MTT, petitioner's testimony was insufficient to establish that he occupied the subject property as his true, fixed, and permanent home in order to qualify for the exemption.

The record also supports the MTT's findings that the four written statements produced by petitioner could not credibly establish petitioner's occupancy of the Harbor Springs property. The four written statements produced by petitioner primarily addressed petitioner's health issues or caretaking of his parents, which required him to stay at the Macomb property for extended periods. The statements did not directly address how long or often petitioner resided at the Harbor Springs property. The MTT also found that petitioner admitted to holding out the Macomb property as his residence by permanently changing his address on all mail and relevant legal documentation. And, the record shows that petitioner provided no other evidence indicating that he stayed at the Harbor Springs property in satisfaction of the occupancy requirements. The MTT's finding that petitioner

ceased using the exempted Harbor Springs property as his principal residence was supported by competent, material, and substantial evidence. *Mich Props, LLC*, 491 Mich at 527.

Although there was minimal evidence produced by petitioner demonstrating that he dwelled at the Harbor Springs property as his principal residence either permanently or continuously, *Estate of Schubert*, 322 Mich App at 449-450, respondent submitted petitioner's driver's license, mailing address, and voter registration card, which listed petitioner's address as the Macomb property address. Respondent also provided evidence demonstrating that petitioner's businesses were also affiliated with the Macomb property. Petitioner was the CEO of One Humanity Foundation, Inc., whose address was tied to the Macomb property address according to the articles of incorporation and other filings of the organization. Additionally, petitioner was involved in several other businesses listing the Macomb property address as the organizations' addresses, including Worldwide Coalitions for Peace, Inc, HU, Inc., Introvert Images, LLC, Logoi Publishing, Inc., and Transitional Guidance, LLC.

Contrary to petitioner's argument that an individual's mailing address could not prove residency, this Court has consistently approved the MTT's reliance on such documents to show one's true, fixed, and permanent home. See *Drew*, 299 Mich App at 502; *Estate of Schubert*, 322 Mich App at 448. The MTT also found credible respondent's testimony regarding petitioner's inconsistent statements as to the reasoning that he was living at the Macomb property, which nine individuals documented over time. Weighing the competing evidence, the MTT found that petitioner failed to demonstrate that he occupied the Harbor Springs property as his principal residence, as he did not dwell at the subject property permanently or continuously. See *Estate of Schubert*, 322 Mich App at 456 ("[T]his Court may not second-guess the [Tribunal's] discretionary decisions regarding the weight to assign to the evidence.") (quotation marks and citation omitted; alteration in original). Given the record evidence, we cannot conclude that the MTT's findings that the evidence submitted by petitioner was insufficient to establish that he occupied the Harbor Springs property as his true, fixed, and permanent home, were not supported competent, material, and substantial evidence.

Petitioner argues that the phrase "shall continue as a principal residence until another principal residence is established" under MCL 211.7dd(c)[2] suggests that the only way for an owner's previously established principal residence to lose its status is for the owner to establish a new principal residence, which would require the owner to *own* the new property. On this basis, petitioner contends that because he owns only the Harbor Springs property and has no ownership interest in the Macomb property, the Macomb property could not be his principal residence. Petitioner's exact argument was rejected in *Estate of Schubert*. As previously explained by this Court, MCL 211.7dd(c) exclusively defines the term "principal residence" and does not state that if a property serves as an owner's principal residence at any given point, the owner automatically gains entitlement to a PRE until the point they establish a different principal residence. See *Estate*

---

[2] MCL 211.7dd(c) defines "principal residence" to mean "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established."

*of Schubert*, 322 Mich App at 453. Instead, MCL 211.7cc(5) makes clear that to be eligible for the PRE, the owner must consistently utilize the property as their principal residence. *Id*. MCL 211.7cc(5) provides that "after exempted property is no longer used as a principal residence by the owner claiming an exemption, that owner shall rescind the claim of exemption by filing with the local tax collecting unit a rescission form prescribed by the department of treasury." In other words, "to be entitled to the PRE, an owner claiming the exemption has a continuing requirement to *use* the property as his or her principal residence." *Estate of Schubert*, 322 Mich App at 453. To meet the criteria of using a property as their principal residence, it must be "the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return. . . ." MCL 211.7dd(c). Should the exempted property no longer be used as the owner's true, fixed, and permanent home, under MCL 211.7dd(c), then the PRE must be rescinded under MCL 211.7cc(5). Thus, while MCL 211.7dd(c) indicates that a person's principal residence persists until a new one is established, a person cannot sustain their claim for a PRE on a property they no longer utilize as their principal residence.

With respect to petitioner's argument that respondent failed to produce evidence of a change of circumstances since its prior PRE approval to the Harbor Springs property in 2012, the burden of proving entitlement to the exemption rests with the person claiming the exemption, the petitioner here, and not respondent. *Estate of Schubert*, 322 Mich App at 448. Regardless, respondent was entitled to review whether petitioner was utilizing the Harbor Springs property as his principal residence and therefore still entitled to a PRE on that property. *Id*. at 453-454. Respondents were not required to wait to review the PRE until petitioner eventually filed a rescission, if at all, under MCL 211.7cc(5). *Id*. It was well within respondent's authority to determine whether petitioner had established ownership and occupancy of the Harbor Springs property or had ceased utilizing that property as his principal residence. *Id*.

Petitioner also argues that respondent failed to produce evidence to support its allegation that petitioner did not occupy the Harbor Springs property during the relevant tax years. Again, the burden of demonstrating that petitioner occupied the Harbor Springs property as his principal residence rested solely on petitioner, not respondent. *Id*. at 448. Even still, as we explained above, the MTT properly found that respondent produced competent, material, and substantial evidence in support of the allegations that petitioner had not utilized the exempted Harbor Springs property as his principal residence. The evidence submitted by respondent, in particular the mailing address, driver's license, voter's registration, and corporate addresses, was sufficient to show that petitioner occupied the Macomb property. Additionally, the MTT found that petitioner's testimony and evidence were insufficient and incredible. *Dep't of Community Health v Risch*, 274 Mich App 365, 375; 733 NW2d 403 (2007) ("[C]redibility determinations are within the province of the fact-finder, and it is not the role of this Court to second-guess those findings or substitute its judgment for that of the agency."). The record supports the MTT's findings, as petitioner's testimony and documentary evidence spoke mainly to the reasoning for his extended stays at the Macomb property without showing how or when he occupied the Harbor Springs property as his principal residence.

According to petitioner, he would periodically extend his stay at the Macomb property to convalesce after an illness, citing MCL 211.7cc(5), which provides that an owner of exempted property may retain the exemption if, among other things, the owner resides at another property solely for the purposes of convalescence. Petitioner cites MCL 211.7cc(5) for the proposition that

he could retain the exemption to his Harbor Springs property because he manifested an intent to return to the exempted property and satisfied the conditions listed in the statute. However, petitioner does not show what facts satisfy the conditions listed in the statute, as the statute requires that petitioner occupy the property "solely for purposes of convalescence," MCL 211.7cc(5), and the evidence does not show that was the sole basis for petitioner residing at the Macomb property.

Petitioner directs us to the MTT's findings that respondent's records showed written statements from nine individuals demonstrating petitioner's history of providing inconsistent statements concerning his living situation since 2015. Petitioner argues that because the statements were not admitted into evidence, the statements were hearsay. We conclude that petitioner waived this issue by failing to object to the testimony of respondent's representative before the MTT. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008) (providing that under the "raise or waive" rule, a litigant's failure to timely raise an issue will generally waive review of that issue on appeal) (citation omitted). The record shows that there was no objection by petitioner to the testimony of respondent's representative. In any event, even if the representative's testimony as to the inconsistencies in petitioner's statements over the years was excluded, there remained competent, material, and substantial evidence in the record.

Affirmed.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel

-8-