# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

CAMPBELL v DEPARTMENT OF TREASURY

Docket No. 161254. Argued November 9, 2021 (Calendar No. 1). Decided June 9, 2022.

Andrew P. Campbell filed a petition in the Michigan Tax Tribunal, challenging the Department of Treasury's denial of his claim to a principal residence exemption (PRE) for the 2017 tax year. Petitioner had claimed and received the exemption for many years. In late 2016, he purchased property in Arizona. Without petitioner's knowledge, Arizona automatically gave him a credit on his tax bill after he purchased the property, treating the Arizona property as his primary residence. Petitioner claimed a PRE for his Michigan property when he filed his 2017 taxes. Respondent denied the exemption because petitioner had received a substantially similar tax exemption, deduction, or credit for the 2017 tax year from Arizona. When petitioner discovered that Arizona considered his Arizona property his primary residence, petitioner had Arizona change the classification. Nevertheless, respondent refused to grant petitioner a PRE for his Michigan property for the 2017 tax year. Petitioner appealed the denial, and respondent affirmed the denial following an informal conference. Petitioner thereafter filed his petition in the tribunal. The tribunal concluded that petitioner's property did not qualify for an exemption under the PRE statute, MCL 211.7cc, because, even though petitioner did not apply for the Arizona primary-residence classification, under Subsection (3)(a) of the PRE statute, he had still "claimed" a substantially similar benefit to the PRE in another state for the 2017 tax year, regardless of the amount of the benefit or petitioner's subsequent rescission of the Arizona classification. However, the tribunal determined that under Subsection (4) of the PRE statute, the PRE for the property continued until December 31, 2017, and that the property, therefore, had a 100% PRE for the 2017 tax year. Respondent moved for reconsideration, and the tribunal denied the motion. Respondent appealed. In a published opinion, the Court of Appeals, BOONSTRA, P.J., and TUKEL and LETICA, JJ., affirmed the tribunal's judgment. 331 Mich App 312 (2020). The Court agreed with the tribunal that the no-longer-valid exemption remained in effect through December 31 of the 2017 tax year and that petitioner was entitled to 100% of the PRE for that year. It reasoned that the result was required by the Legislature's public-policy choice in the statutes at issue, including Subsection (4), which creates a uniform taxation scheme that promotes ease of administration by providing a uniform formula for determining the date on which an exemption that has become invalid ceases to apply. The Supreme Court granted respondent's application for leave to appeal. 506 Mich 964 (2020).

In a unanimous opinion by Justice WELCH, the Supreme Court *held*:

Under MCL 211.7cc(3)(a), petitioner was not entitled to a PRE in 2017 because he had claimed in that year a substantially similar exemption, deduction, or credit on property he owned in Arizona. Subsection (4) was not applicable to this case because petitioner's PRE was denied under MCL 211.7cc(3)(a), and Subsection (4) therefore did not entitle petitioner to the benefit of a continuing exemption through the end of the calendar year. The Court of Appeals judgment was reversed because it erred by relying on Subsection (4) to conclude that petitioner's denied PRE was valid through the end of the 2017 tax year.

1. Under MCL 211.1, all property, real and personal, within Michigan's jurisdiction is subject to taxation unless expressly exempted. MCL 211.7cc(1) provides that a principal residence is exempt from the tax levied by a local school district for school operating purposes if the owner of that principal residence claims an exemption as provided in the PRE statute. To obtain the PRE, MCL 211.7cc(2) states that the property owner must file an affidavit with the local tax collecting unit on a form prescribed by the treasury department attesting (1) that the property is owned and occupied as a principal residence by that owner of the property on the date the affidavit is signed and (2) that the owner has not claimed a substantially similar exemption, deduction, or credit on property in another state.

2. MCL 211.7cc(3) prescribes disqualifying factors that preclude eligibility for the PRE even if a person owns and occupies a property as a principal residence. In *Stege v Dep't of Treasury*, 252 Mich App 183 (2002), the Court of Appeals held that the PRE statute did not prohibit owners from simultaneously claiming a PRE in this state at the same time the owner claimed a similar tax benefit for a residence in another state. The following year, the Legislature amended the PRE statute to address the *Stege* opinion. Relevant here, Subsection (3)(a) now provides that a person is not entitled to a PRE in any calendar year in which that person has claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in another state. A claim for a substantially similar exemption, deduction, or credit in another state occurs at the time of the filing or granting of a substantially similar exemption, deduction, or credit in another state. If the assessor of the local tax collecting unit, the department of treasury, or the county denies an existing claim for exemption under the PRE statute, an owner of the property subject to that denial cannot rescind a substantially similar exemption, deduction, or credit claimed in another state in order to qualify for the exemption under the PRE statute for any of the years denied.

3. MCL 211.7cc(4) provides, in part, that upon receipt of an affidavit filed under Subsection (2) and unless the claim is denied under the PRE statute, the assessor shall exempt the property from the collection of the tax levied by a local school district for school operating purposes until December 31 of the year in which the owner is no longer entitled to an exemption as provided in Subsection (3). Before the Legislature's amendment of the PRE statute, MCL 211.7cc(4) had allowed only for denial of a claim under Subsection (6); to conform with the 2003 change in Subsection (3), the Legislature broadened Subsection (4) to make it generally applicable to separate bases for PRE denials under the PRE statute. Overall, legislative amendments in 2003 (to address the Court of Appeals' decision in *Stege*) and 2017 (clarifying that a property owner is not entitled to a PRE in any calendar year in which the owner claims a substantially similar tax benefit in another state—regardless of whether the out-of-state benefit is rescinded) reflect a clear legislative intent to preclude property owners from obtaining the benefit of a PRE and a similar

out-of-state tax benefit in the same year. Because Subsection (4) does not apply when an owner's PRE is denied, the subsection does not allow a property owner the benefit of a continuing exemption through the end of the calendar year in which a PRE claim is denied.

4. Under MCL 211.7cc(8), the treasury department determines whether the property is the principal residence of the owner claiming the exemption—i.e., the department has authority to independently review the validity of PRE claims and to deny a claim for exemption if the claimant is not entitled to that exemption. In this case, the treasury department reviewed and denied petitioner's 2017 PRE claim because, as prescribed in Subsection (3), he had received a substantially similar exemption, deduction, or credit on his Arizona property in that same calendar year. Contrary to the Court of Appeals' conclusion, because the PRE was *denied*, MCL 211.7cc(4) did not apply to extend the no-longer-valid exemption through December 31 of the 2017 tax year.

Court of Appeals judgment reversed; treasury department decision and order of determination reinstated.

Justice VIVIANO, joined by Justices ZAHRA and CLEMENT, concurring in full with the majority, wrote separately to further explain why petitioner was not entitled under Subsection (4) to a PRE through the end of the 2017 tax year. To fully resolve the issue before the Court, it was critical to understand the Subsection (4) language "or the owner is no longer entitled to an exemption as provided in Subsection (3)" because the Court of Appeals relied on that language to conclude, incorrectly, that petitioner maintained the PRE through the end of 2017. In response to *Stege*, the Legislature amended Subsection (3) to provide that a person is not entitled to a PRE when that person has claimed a substantially similar exemption, deduction, or credit on property in another state that is not rescinded. Before amendments of the statute beginning in 2003, Subsection (4) provided owners a statutory incentive to voluntarily rescind their PREs; if an owner rescinded his or her PRE, Subsection (4) applied and the property owner would enjoy the PRE through the end of the year in which the PRE was rescinded. The Legislature maintained the pre-2003 incentive structure when it later amended Subsection (4). For that reason, when a claim is *denied* under Subsection (3), Subsection (4) does not apply. Because petitioner did not voluntarily rescind his PRE in 2017 but, rather, the treasury department denied his claim, Subsection (4) did not apply and he was not entitled to retain the exemption until the end of the 2017 tax year.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 9, 2022

S T A T E   O F   M I C H I G A N

SUPREME COURT

ANDREW P. CAMPBELL,

Petitioner-Appellee,

v

No. 161254

DEPARTMENT OF TREASURY,

Respondent-Appellant.

BEFORE THE ENTIRE BENCH

WELCH, J.

In this property tax dispute, we consider whether a property owner is entitled to claim a principal residence exemption (PRE) under Michigan tax law when the owner received a similar tax benefit for a home in another state. We conclude that the property owner is not entitled to the PRE. Specifically, under MCL 211.7cc(3)(a), a property owner "is not entitled to [the PRE] in any calendar year in which . . . [t]hat person has claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in

another state." MCL 211.7cc(3)(a) (paragraph structure omitted). Accordingly, we reverse the judgment of the Court of Appeals and reinstate the Department of Treasury's October 2, 2018 decision and order of determination denying petitioner's PRE for the 2017 tax year.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner, Andrew P. Campbell, is a lifelong Michigan resident. For many years, petitioner claimed and enjoyed a PRE on his Michigan residence. In late 2016, petitioner purchased a second home in Surprise, Arizona. Petitioner indeed received a surprise the following year: respondent, the Michigan Department of Treasury (Treasury), reviewed and denied petitioner's PRE claim for his Michigan property for the 2017 tax year. The denial notice stated the following:

> The parcel did not contain a dwelling owned and occupied by a person(s) as his or her principal residence. A person is not entitled to a PRE if the property is not occupied by the owner as his or her principal residence as defined by MCL 211.7dd and/or if any of the conditions detailed in Subsection (3) of MCL 211.7cc occur (refer to the back of this letter for the applicable statutory language). [Emphasis omitted.]

Petitioner appealed Treasury's determination to the Michigan Tax Tribunal's Small Claims Division. As part of his appeal, petitioner attached numerous documents in an attempt to demonstrate his Michigan residency, including his driver's license, insurance, vehicle registrations, voter registration, library card, credit card and banking statements, tax records, and a jury summons. Treasury's position was that it was not questioning whether petitioner actually maintained his Michigan home as his principal residence. Rather, Treasury determined that petitioner was not entitled to the PRE for the 2017 tax year because he had claimed a substantially similar exemption, deduction, or credit in Arizona that same year.

At the Tax Tribunal hearing, petitioner admitted that he had received, unknowingly and unintentionally, a substantially similar exemption, deduction, or credit on his Arizona tax bill because, at least according to the state of Arizona, the Arizona property was his primary residence (and thus eligible for a reduction on property taxes otherwise owed). When petitioner became aware that the effect of this Arizona "primary residence" status would eliminate his ability to claim the PRE on his Michigan property taxes, he promptly contacted the Maricopa County Assessor's Office and had the classification corrected on a prospective basis. By all appearances, this seems to have been an honest mistake. However, Treasury took the position that under Michigan law, it makes no difference whether the substantially similar exemption, deduction, or credit is deliberately claimed or later rescinded.

The Tax Tribunal agreed with Treasury that petitioner was not entitled to the PRE for the 2017 tax year because he had claimed a substantially similar tax benefit in Arizona and that this determination stood without regard to the amount of the benefit offered by Arizona or petitioner's subsequent rescission of the Arizona primary residence classification. Despite upholding Treasury's determination under MCL 211.7cc(3)(a), the Tax Tribunal then held, with minimal analysis, that petitioner's Michigan PRE continued until the end of that tax year—i.e., December 31, 2017—under a different subsection, MCL 211.7cc(4). The result of this decision was that petitioner was set to receive both the Michigan PRE and Arizona's substantially similar tax benefit for the 2017 tax year. Treasury appealed.

Our Court of Appeals affirmed in a published opinion, holding that "the no-longer-valid exemption remained in effect through December 31 of the 2017 tax year" under MCL

3

211.7cc(4) and that petitioner "is entitled to 100% of the PRE for that year." *Campbell v Dep't of Treasury*, 331 Mich App 312, 327; 952 NW2d 568 (2020). It reasoned that this was the necessary result of "the public-policy choices made by the Legislature in the statutes at issue." *Id*. at 327 n 3. In particular, the Court understood Subsection (4) as "creating a uniform taxation scheme that promotes ease of administration" because it "provides a uniform formula for determining the date on which an exemption that has become invalid ceases to apply." *Id*. at 324. We granted leave to consider whether our Court of Appeals erred by interpreting MCL 211.7cc(4) as allowing petitioner's PRE to continue through December 31 of the calendar year in which he was not entitled to the exemption. *Campbell v Dep't of Treasury*, 506 Mich 964 (2020).[1]

## II. STANDARD OF REVIEW

Our review of Michigan Tax Tribunal decisions is limited. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. We review de novo questions of statutory interpretation. *Mt Pleasant*, 477 Mich at 53.

---

[1] Petitioner has not participated in any appellate proceedings. The Real Property Law Section of the State Bar of Michigan submitted an amicus curiae brief advocating for an affirmance of the Court of Appeals decision.

## III. ANALYSIS

### A. INTERPRETATIVE STANDARDS

Under the General Property Tax Act (GPTA), MCL 211.1 *et seq*., "all property, real and personal, within the jurisdiction of this state, *not expressly exempted*, shall be subject to taxation." MCL 211.1 (emphasis added). We understand and give effect to the Legislature's intent as expressed in its words and phrases according to their plain meaning. *Bisio v Village of Clarkston*, 506 Mich 37, 44; 954 NW2d 95 (2020). Although the Tax Tribunal's interpretation of a tax statute is entitled to " 'respectful consideration,' " we will enforce an unambiguous statute as written. *SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 71; 894 NW2d 535 (2017) (citation omitted).

### B. THE MICHIGAN PRINCIPAL RESIDENCE EXEMPTION

Because taxation is the rule and exemption from taxation the exception, the burden is on the claimant to establish the right to a tax exemption. *Detroit v Detroit Commercial College*, 322 Mich 142, 149; 33 NW2d 737 (1948); MCL 211.1. The PRE is governed by MCL 211.7cc, which details how a local tax collecting unit, when the exemption is properly claimed, must exempt a qualifying principal residence from the collection of the tax levied by local school districts for school operating purposes. Subsection (1) provides an express exemption for a principal residence "if an owner of that principal residence claims an exemption as provided in [MCL 211.7cc]."[2] MCL 211.7cc(1). Subsection (2) specifies

---

[2] "Principal residence" is a defined term. In relevant part, it "means the 1 place where an owner of the property has his or her true, fixed, and permanent home to which, whenever absent, he or she intends to return and that shall continue as a principal residence until another principal residence is established." MCL 211.7dd(c). In this case, the parties do not dispute that petitioner's Michigan home might satisfy the requirements to qualify as his principal residence.

the mechanics of how a property owner may claim the PRE by filing an affidavit with the local tax collecting unit on a form prescribed by Treasury attesting both "that the property is owned and occupied as a principal residence by that owner of the property on the date that the affidavit is signed" and "that the owner has not claimed a substantially similar exemption, deduction, or credit on property in another state." MCL 211.7cc(2).

The remaining sections of MCL 211.7cc provide, in pertinent part:

(3) . . . For taxes levied after December 31, 2002, *a person is not entitled to an exemption under this section in any calendar year in which any of the following conditions occur*:

(a) *That person has claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in another state.* Upon request by the department of treasury, the assessor of the local tax collecting unit, the county treasurer or his or her designee, or the county equalization director or his or her designee, a person who claims an exemption under this section shall, within 30 days, file an affidavit on a form prescribed by the department of treasury stating that the person has not claimed a substantially similar exemption, deduction, or credit on property in another state. *A claim for a substantially similar exemption, deduction, or credit in another state occurs at the time of the filing or granting of a substantially similar exemption, deduction, or credit in another state. If the assessor of the local tax collecting unit, the department of treasury, or the county denies an existing claim for exemption under this section, an owner of the property subject to that denial cannot rescind a substantially similar exemption, deduction, or credit claimed in another state in order to qualify for the exemption under this section for any of the years denied.* If a person claims an exemption under this section and a substantially similar exemption, deduction, or credit in another state, that person is subject to a penalty of $500.00. The penalty shall be distributed in the same manner as interest is distributed under subsection (25).

\* \* \*

(4) Upon receipt of an affidavit filed under subsection (2) *and unless the claim is denied under this section*, the assessor shall exempt the property from the collection of the tax levied by a local school district for school operating purposes to the extent provided under section 1211 of the revised

6

school code, 1976 PA 451, MCL 380.1211, as provided in subsection (1) until December 31 of the year in which the property is transferred or, except as otherwise provided in subsections (5), (32), and (33), is no longer a principal residence as defined in section 7dd, or the owner is no longer entitled to an exemption as provided in subsection (3).

\* \* \*

(8) The department of treasury shall determine if the property is the principal residence of the owner claiming the exemption. . . . [T]he department of treasury may review the validity of exemptions for the current calendar year and for the 3 immediately preceding calendar years. Except as otherwise provided in subsections (5), (32), and (33), if the department of treasury determines that the property is not the principal residence of the owner claiming the exemption, the department shall send a notice of that determination to the local tax collecting unit and to the owner of the property claiming the exemption, indicating that the claim for exemption is denied, stating the reason for the denial, and advising the owner claiming the exemption of the right to appeal the determination to the department of treasury and what those rights of appeal are. . . . Upon receipt of a notice that the department of treasury has denied a claim for exemption, the assessor shall remove the exemption of the property and, if the tax roll is in the local tax collecting unit's possession, amend the tax roll to reflect the denial and the local treasurer shall within 30 days of the date of the denial issue a corrected tax bill for any additional taxes with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest and penalty. If the tax roll is in the county treasurer's possession, the tax roll shall be amended to reflect the denial and the county treasurer shall within 30 days of the date of the denial prepare and submit a supplemental tax bill for any additional taxes, together with interest at the rate of 1.25% per month or fraction of a month and penalties computed from the date the taxes were last payable without interest or penalty. [Emphasis added.]

The statute is clear on its face. A tax exemption for real or personal property under the GPTA is available only when the Legislature *expressly* exempts that property from taxation. MCL 211.1. That has not occurred here. Instead, the Legislature explicitly provided that "a person *is not entitled to an exemption* under [MCL 211.7cc] *in any calendar year*" when "[t]hat person has claimed a substantially similar exemption,

7

deduction, or credit, regardless of amount, on property in another state."[3] MCL 211.7cc(3)(a) (emphasis added).[4] As applied to the facts of this case, petitioner was not entitled to the PRE in the 2017 tax year exactly because he admitted that he had received "a substantially similar exemption, deduction, or credit" on his Arizona property in that same calendar year.

Although our Court of Appeals arrived at this same conclusion, it did not end its analysis there. Instead, reasoning that the Legislature sought to maintain uniformity and to simplify the administration of the PRE, that Court held that Subsection (4) applied and worked to allow petitioner to maintain the benefit of his denied PRE through the end of the 2017 calendar year. *Campbell*, 331 Mich App at 324-325. We disagree.

---

[3] As a general rule, the taxable status of real property is determined as of December 31 of the *immediately preceding* year. MCL 211.2(2). However, in the context of the PRE, a different rule applies. "Notwithstanding the tax day provided in [MCL 211.2], the status of property as a principal residence shall be determined on the date an affidavit claiming an exemption is filed under [MCL 211.7cc(2)]." MCL 211.7cc(1). Subsection (3)(a) requires a review of the property owner's tax claims in another state during the course of the entire calendar year.

[4] Our Court of Appeals recently described Subsection (3) as stating the "conditions in which a person otherwise qualified to receive the PRE in Subsection (1) is disqualified from doing so." *Foster v Van Buren Co*, 332 Mich App 273, 281; 956 NW2d 554 (2020). The *Principal Residence Exemption Guidelines*, a publication issued by Treasury, similarly refers to Subsection (3) as listing "disqualifying factors" that preclude eligibility for the PRE even if a person owns and occupies a property as a principal residence. Treasury, *Principal Residence Exemption Guidelines* (August 2021), p 25, available at <https://www.michigan.gov/documents/taxes/PRE_Guidelines_725007_7.pdf> (accessed December 9, 2021) [https://perma.cc/HH73-RLCK]. The result is the same regardless of whether the property owner is considered "disqualified" or simply unable to establish entitlement to the PRE because of a failure to satisfy the express conditions imposed by the Legislature for eligibility. Under either circumstance, the property owner is not entitled to the PRE.

8

To understand why the Court of Appeals erred in its interpretation of Subsection (4), it is important to recognize the changes that the Legislature has made to MCL 211.7cc over time and in response to earlier judicial decisions interpreting this statute. See *Bush v Shabahang*, 484 Mich 156, 167; 772 NW2d 272 (2009) ("[C]ourts must pay particular attention to statutory amendments, because a change in statutory language is presumed to reflect either a legislative change in the meaning of the statute itself or a desire to clarify the correct interpretation of the original statute.").

In *Stege v Dep't of Treasury*, 252 Mich App 183, 193-196; 651 NW2d 164 (2002), our Court of Appeals held that the GPTA did not prohibit property owners from simultaneously claiming both a PRE and a similar tax benefit for a separate residence in another state. The Legislature responded by amending MCL 211.7cc(3) to provide that property owners are not entitled to a PRE when they have "claimed a substantially similar exemption, deduction, or credit on property in another state that is not rescinded." 2003 PA 105. That change necessitated a conforming change to Subsection (4). Previously, Subsection (4) stated, "Upon receipt of an affidavit filed under subsection (2) and unless the claim is denied *under subsection (6)*, the assessor shall exempt the property . . . ." MCL 211.7cc(4) as amended by 2002 PA 624 (emphasis added). Because 2003 PA 105 added a new basis for denying a PRE under Subsection (3)—i.e., claiming a substantially similar tax exemption in another state—Subsection (4) had to be broadened to make it generally applicable to all separate bases for PRE denials under MCL 211.7cc. Accordingly, 2003 PA 105 broadened the coverage of Subsection (4) to reflect its current form: "unless the claim is denied *under this section* . . . ." MCL 211.7cc(4) as amended by 2003 PA 105 (emphasis added).

9

In 2017, the Tax Tribunal issued an unpublished decision holding that property owners whose PRE claims are denied because they claimed a substantially similar tax benefit in another state could rescind their out-of-state tax benefit in order to qualify for the Michigan PRE that was previously denied. See *Walczak Trust v Berrien Co*, unpublished opinion of the Michigan Tax Tribunal, issued January 10, 2017 (Docket No. 16-001208), p 2. The Legislature responded to this decision by again amending MCL 211.7cc(3), this time to clarify that a property owner *is not* entitled to a PRE "in *any* calendar year in which" that owner claims a substantially similar tax benefit in another state—regardless of whether the out-of-state benefit is rescinded. See 2017 PA 121 (emphasis added).[5] Overall, we understand these legislative amendments to reflect a clear legislative intent to preclude property owners from obtaining the benefit of the PRE and a similar out-of-state tax benefit in the same year.[6]

As we have noted in earlier decisions, "[t]he GPTA provides a comprehensive system for the assessment of property for ad valorem tax purposes and the collection of those taxes. It also provides for the administration of the system." *Mich Props, LLC v Meridian Twp*, 491 Mich 518, 530; 817 NW2d 548 (2012). A PRE is not available "in any calendar year" when a property owner "claimed a substantially similar exemption, deduction, or credit, regardless of amount, on property in another state." MCL

---

[5] In enacting 2017 PA 121, the Legislature explicitly stated, "This amendatory act is curative and intended to correct any misinterpretation of legislative intent in the final opinion and judgment of the Michigan Tax Tribunal, MTT Docket No. 16-001208, issued January 10, 2017." 2017 PA 121, enacting § 2.

[6] Consistently with this understanding of legislative intent, the Legislature subjects those wrongfully claiming the PRE and a substantially similar exemption, deduction, or credit in another state to a $500 penalty. MCL 211.7cc(3)(a).

211.7cc(3)(a). Contrary to the Court of Appeals, we do not interpret Subsection (4) as allowing a property owner the continuing benefit of a denied exemption claim through the end of the calendar year. Instead, Subsection (4) should be read consistently with its purpose in administering our system of property taxation through the local tax collecting unit. It directs that "unless the claim is denied under this section, the assessor shall exempt the property" and describes other circumstances when the exemption will no longer remain valid. MCL 211.7cc(4).

To resolve this case, we recognize that Treasury *denied* petitioner's PRE pursuant to its authority under MCL 211.7cc to independently review the validity of PRE claims and to deny a claim for an exemption if the claimant is not entitled to that exemption. See MCL 211.7cc(8) (stating that "the department of treasury may review the validity of exemptions for the current calendar year and for the 3 immediately preceding calendar years"); *Schubert v Dep't of Treasury*, 322 Mich App 439, 453-454; 912 NW2d 569 (2017). When a PRE claim is denied under MCL 211.7cc, other provisions require that the assessor "remove the exemption of the property," that the tax roll be amended "to reflect the denial," and that a corrected tax bill issue "within 30 days of the date of the denial" for any additional taxes with interest. See MCL 211.7cc(6), (8), and (11). In other words, when a property owner's PRE claim is denied under MCL 211.7cc, Subsection (4) imparts no further duty or authority on the assessor to continue to exempt the property from taxation.[7]

---

[7] In light of our holding that Subsection (4) does not entitle a property owner to the benefit of a continuing exemption through the end of a calendar year when a PRE claim is denied, we have no occasion to address whether a property owner can obtain the benefit of a continuing exemption through the end of a calendar year under Subsection (4) by

Therefore, the Court of Appeals erred when it applied Subsection (4) to conclude otherwise.

We reverse the judgment of the Court of Appeals and reinstate the October 2, 2018 decision and order of determination of the Department of Treasury.

Elizabeth M. Welch
Bridget M. McCormack
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

---

preemptively rescinding a Michigan PRE claim in anticipation of claiming a substantially similar tax benefit in another state.

STATE OF MICHIGAN

SUPREME COURT

ANDREW P. CAMPBELL,

　　　　　Petitioner-Appellee,

v                                                                    No. 161254

DEPARTMENT OF TREASURY,

　　　　　Respondent-Appellant.

_____

VIVIANO, J. (*concurring*).

I concur with the majority but write separately because I do not believe the majority opinion adequately explains why petitioner, Andrew P. Campbell, is not entitled to a principal residence exemption (PRE) through the end of the 2017 tax year under Subsection (4) of the PRE statute, MCL 211.7cc(4). In upholding petitioner's claim, the Court of Appeals panel believed that Subsection (4) was "at the heart of this appeal" and was "the critical provision" in resolving this case. *Campbell v Dep't of Treasury*, 331 Mich App 312, 318, 322; 952 NW2d 568 (2020). Although the majority correctly concludes that Subsection (4) is not applicable, it does not sufficiently explain why this is so. I would take this opportunity to explain that Subsection (4) applies when the taxpayer voluntarily rescinds his or her PRE—not where, as here, the claim is denied by the tax authorities under MCL 211.7cc.

The majority holds that because petitioner's PRE was denied by respondent, the Department of Treasury, under MCL 211.7cc(3), that subsection's prohibition applied and he was "not entitled to an exemption under [MCL 211.cc7] in any calendar year in which"

he "claimed a substantially similar exemption . . . in another state." I agree that Subsection (3) provides part of the answer. But the Court of Appeals looked to Subsection (4), which appears to set forth a different rule:

> Upon receipt of an affidavit filed under subsection (2) and unless the claim is denied under this section, the assessor shall exempt the property from the collection of the tax levied by a local school district for school operating purposes to the extent provided under section 1211 of the revised school code, 1976 PA 451, MCL 380.1211, as provided in subsection (1) until December 31 of the year in which the property is transferred or, except as otherwise provided in subsections (5), (32), and (33), is no longer a principal residence as defined in section 7dd, or the owner is no longer entitled to an exemption as provided in subsection (3).

Under its reading, the Court of Appeals concluded that this subsection applied and that it established an end date of December 31 for petitioner's PRE. *Campbell*, 331 Mich App at 322, 325-327. The majority purports to explain why Subsection (4) is inapplicable, but offers only a dry statutory history followed by the broad conclusion that the history "reflect[s] a clear legislative intent to preclude property owners from obtaining the benefit of the PRE and a similar out-of-state benefit in the same year." Clearly, one colorable reading of Subsection (4) is that, at least in certain circumstances, the Legislature intended to *allow* the taxpayer to benefit from the PRE through the end of the year in which he or she claims a substantially similar tax exemption in another state. We must explain why those circumstances do not exist here. To complete the analysis, a more thorough investigation of the statutory history must be undertaken along with an examination of the statutory text.

Before MCL 211.7cc was amended in 2003, the statute contemplated that owners would lose their PREs only if they transferred ownership or no longer used the property as

2

a principal residence. Former Subsection (3) simply stated that a husband and wife who filed a joint tax return were only entitled to one PRE, then known as the "homestead exemption." MCL 211.7cc(3), as amended by 2002 PA 624. Like the current statute, former Subsection (5) set forth the requirement that an owner who no longer uses his or her home as a principal residence "shall rescind the claim of exemption . . . ." MCL 211.7cc(5), as amended by 2002 PA 624.[1] And, as now, former Subsection (6) set out the process for a local tax assessor to deny a new or existing PRE when the claimed property was no longer the owner's principal residence. MCL 211.7cc(6), as amended by 2002 PA 624.[2] At that time, former Subsection (4) was straightforward, stating, in relevant part, that "unless the claim is denied *under subsection (6),*" the property would be exempt "until December 31 of the year in which the property is transferred or no longer a homestead . . . ." MCL 211.7cc(4), as amended by 2002 PA 624 (emphasis added).

The statutory framework provided owners an incentive to voluntarily rescind their PREs. If they did so, then Subsection (4) would apply because their PRE claim would not

---

[1] This subsection presently states:

> (5) . . . [N]ot more than 90 days after exempted property is no longer used as a principal residence by the owner claiming an exemption, that owner shall rescind the claim of exemption by filing with the local tax collecting unit a rescission form prescribed by the department of treasury. [MCL 211.7cc(5).]

[2] This subsection now states,

> (6) . . . [I]f the assessor of the local tax collecting unit believes that the property for which an exemption is claimed is not the principal residence of the owner claiming the exemption, the assessor may deny a new or existing claim . . . . The assessor may deny a claim for exemption for the current year and for the 3 immediately preceding calendar years. [MCL 211.7cc(6).]

3

be denied for the year in which the claim was rescinded. In other words, under former Subsection (4), the property owners could enjoy the PRE through the end of the year. If the claim was denied (under Subsection (6)), then they would not receive this benefit. See MCL 211.7cc(5), as amended by 2002 PA 624. As now provided for in Subsection (6), if a claim was denied under the former statute, the assessor was to remove the exemption and assess taxes with interest for the period in which the taxes should have been paid. See MCL 211.7cc(6) and (7), as amended by 2002 PA 624.

As the majority notes, the Court of Appeals in 2002 held that this statutory framework allowed taxpayers to simultaneously claim a PRE in Michigan and a similar tax benefit in another state. See *Stege v Dep't of Treasury*, 252 Mich App 183, 193-196; 651 NW2d 164 (2002). In response, the Legislature amended MCL 211.7cc(3) to provide that a person is not entitled to a PRE when that person has "claimed a substantially similar exemption, deduction, or credit on property in another state that is not rescinded." See MCL 211.7cc(3)(a), as amended by 2003 PA 105. The Legislature also put MCL 211.7cc(4) into its present form, expanding the introductory clause to exclude any claim "denied under this section[.]" See MCL 211.7cc(4), as amended by 2003 PA 105, and MCL 211.7cc(4), as amended by 2020 PA 96. The pre-2003 incentive structure remained in place after these amendments. Specifically, the statutory structure continues to encourage property owners to voluntarily rescind their PREs. Thus, if a claim is *denied* under Subsection (3), then Subsection (4) is inapplicable. That is, if the property owner rescinds his or her PRE, then Subsection (4)'s operative language ("unless the claim is *denied* under this section") would not be triggered and the December 31 termination date

4

would apply to allow the property owner to retain the PRE for the remainder of the calendar year.[3] MCL 211.7cc(4) (emphasis added).

The language in Subsection (3) that the majority relies on was added in response to a Tax Tribunal decision in 2017. The tribunal held that a taxpayer claiming a substantially similar exemption in another state could rescind that exemption and thereby retain his or her entitlement to the previously denied PRE in this state. See *Walczak Trust v Berrien Co*, unpublished opinion of the Michigan Tax Tribunal, issued January 10, 2017 (Docket No. 16-001208), p 2. The Legislature thereafter amended Subsection (3) to make clear that a person is not entitled to a PRE "in any calendar year in which" that person "claimed a substantially similar exemption . . . in another state," without regard to whether the other

---

[3] Amicus curiae the Real Property Law Section of the State Bar of Michigan argues that the language in Subsection (4)—"the claim . . . denied under this section"—refers only to a local tax assessor's initial assessment of a *new* PRE claim filed as an affidavit under Subsection (2) and, therefore, that respondent's denial of petitioner's *existing* PRE claim had no effect on the applicability of Subsection (4). A review of MCL 211.7cc as a whole, however, suggests the Legislature did not intend to limit Subsection (4)'s operative clause to only new claims. For example, MCL 211.7cc(6) refers to both "new" and "existing" claims in describing the local tax collecting unit's authority to deny a PRE if the assessor believes the property is not the owner's principal residence. Had the Legislature intended the language "the claim . . . denied under this section" in Subsection (4) to refer only to a "new" PRE claim, it likely would have used that phrasing. See *US Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009) ("When the Legislature uses different words, the words are generally intended to connote different meanings. . . . If the Legislature had intended the same meaning in both statutory provisions, it would have used the same word."). See also Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 170 ("[W]here the document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea.").

5

exemption is rescinded.  See MCL 211.7cc(3)(a), as amended by 2017 PA 121.[4]  In the same legislation, Subsection (4) was amended to add the clause at the center of the Court of Appeals' analysis: "or the owner is no longer entitled to an exemption as provided in subsection (3)."   MCL 211.7cc(4), as amended by 2017 PA 121, and discussed in *Campbell*, 331 Mich App at 322, 325-327.  This last change led the Court of Appeals here to conclude that terminations of PREs under Subsection (3) fall within Subsection (4) and have an end date on December 31.  *Campbell*, 331 Mich App at 325-327.

While Subsection (4) does not apply here because the claim *was* denied under this subsection by the taxing authority, it is important to give some account of the language in Subsection (4) because the Court of Appeals relied on it.  As noted, the December 31 end date in Subsection (4) applies when taxpayers voluntarily rescind their PREs, thus giving them the benefit of the PRE that they would not otherwise have if their claims were denied. It is possible, as the Court of Appeals concluded, that the phrase "December 31 of the year in which" applies to the phrase "or the owner is no longer entitled to an exemption as provided in subsection (3)."  If so, then Subsection (4) would similarly benefit owners who voluntarily rescind their PREs when they acquire a substantially similar exemption in another state.[5]  In other words, application of the December 31 date would encourage

_____

[4] The Legislature explicitly stated that the statute was in reaction to *Walczak Trust*: "This amendatory act is curative and intended to correct any misinterpretation of legislative intent in the final opinion and judgment of the Michigan Tax Tribunal, MTT Docket No. 16-001208, issued January 10, 2017."  2017 PA 121, enacting § 2.

[5] In interpreting Subsection (4), the Court of Appeals concluded that the December 31 language in the subsection applied to the new phrase added to the end of the subsection in 2017.  *Campbell*, 331 Mich App at 325-327.  That is, the Court read the statute as terminating the PRE on "December 31 of the year in which the property is transferred

6

owners to voluntarily rescind their PREs when their claim would otherwise be denied under Subsection (3), just as it does for transfers and rescissions based on the home no longer being used as a principal residence. We need not decide that question here because the PRE was not voluntarily rescinded.

To fully resolve the question that is before the Court and explain why the Court of Appeals erred, it is critical to explain why Subsection (4) is inapplicable. The answer is that Subsection (4) applies only when a claim is not denied under MCL 211.7cc, and a claim is not denied when it is voluntarily rescinded. Here, petitioner did not voluntarily rescind his PRE; it was denied by the taxing authority. Therefore, Subsection (4) cannot apply and the language in Subsection (3) prohibiting the taxpayer from claiming an exemption controls.

For these reasons, I concur.

David F. Viviano
Brian K. Zahra
Elizabeth T. Clement

---

or . . . is no longer a principal residence . . . , or the owner is no longer entitled to an exemption as provided in subsection (3)." MCL 211.7cc(4). While the December 31 deadline evidently applies to situations when "the property is transferred or . . . is no longer a principal residence," it is not immediately clear whether the December 31 deadline also extends to situations in which "the owner is no longer entitled to an exemption as provided in subsection (3)." *Id*. Of course, it is difficult to see what meaning that last phrase would have if the December 31 end date did not apply to it. Because Subsection (4) is not triggered when a PRE is denied, I need not resolve this in the instant case, but it is an open question whether the December 31 end date would apply to the third situation mentioned, where a taxpayer voluntarily rescinds a PRE because of claiming a substantially similar credit in another state.

7